UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BARRY W. SOARDS | ) | CASE NO.: 06-30121 |
| NANCY A. SOARDS | ) | |
| | ) | |
|          Debtors | ) | |

and

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ARNOLD L. MORRISON | ) | CASE NO.: 06-30168 |
| PATRICIA L. MORRISON a.k.a. | ) | |
|   LUANN MORRISON | ) | |
| | ) | |
|          Debtors | ) | |

## MEMORANDUM-OPINION

Both of these matters came before the Court on Objections to the Chapter 13 Plans of Debtors Barry W. Soards and Nancy A. Soards ("the Soards") and Arnold L. Morrison and Patricia L. Morrison ("the Morrisons") by Creditor Ford Motor Credit Company ("Ford"). Following hearings on the Objections and consideration of post-hearing briefs of the parties, the Court **SUSTAINS** Ford's Objections. An Order incorporating the findings herein accompanies this Memorandum-Opinion.

## FACTS

A. <u>The Soards</u>.

On January 3, 2005, the Soards purchased a 2005 Ford Escape. The vehicle was financed by Ford at an interest rate of 3.9%.

On or about January 24, 2006, the Soards filed their Voluntary Petition seeking relief under Chapter 13 of the United States Bankruptcy Code. The Soards' Plan proposed to treat Ford's claim fully secured for $22,989.37 with interest to be paid at the contract rate of 3.9%.

Ford objects to confirmation of the Plan contending it is entitled to receive interest on its claim at one to three percentage points above the prime rate which is currently 7.25%.

B.  The Morrisons.

On August 17, 2002, the Morrisons purchased a 2002 Ford F-150 Supercab truck from Town & Country Ford. The vehicle was financed by Ford at an interest rate of 2.9%.

On or about January 30, 2006, the Morrisons filed their Voluntary Petition seeking relief under Chapter 13 of the United States Bankruptcy Code. The Morrisons' Plan initially proposed to bifurcate Ford's claim treating the creditor secured for $8,000 at an interest rate of 6% with the balance of the claim unsecured. However, following an appraisal done on the vehicle the Debtors agreed at the Section 341 First Meeting of Creditors to treat Ford's claim as fully secured with interest to be paid at the contract rate of 2.9%.

Ford objects to confirmation of the Plan contending it is entitled to receive interest on its claim at one to three percentage points above the prime rate which is currently 7.25%.

**LEGAL ANALYSIS**

The issue before the Court is whether the "formula approach" for determining interest rates as set forth in Till v. SCS Credit Corp., 541 U.S. 465 (2004) applies to a creditor whose claim is treated as fully secured where the contract rate of interest is below prime. The Court determines that the Till analysis is valid post-enactment of the Bankruptcy Abuse Prevention Consumer Protection

Act of 2005 ("BAPCPA") and adequately compensates creditors for the time value of plan payments under 11 U.S.C. §1325.

In both cases at bar, the Debtors proposed to treat Ford's claims in the Plan as fully secured and pay interest on the claims at the contract rate, which is below prime. Ford contends that the Till analysis requires the use of the "prime plus method" for determining the amount of the time value of plan payments under 11 U.S.C. §1325(a)(5)(B)(ii). The Court agrees with Ford's analysis of the issue.

There is no dispute that Ford's claims in both cases are secured. Accordingly, under 11 U.S.C. §1325(a)(5)(B)(ii),

> (a) . . . the court shall confirm a plan if – –
> . . . . .
> (5) with respect to each allowed secured claim provided for by the plan – –
> (I) the plan provides that-----
> . . . . .
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; . . .

Following this portion of the statute is an unnumbered paragraph, which is referred to in current case law as the "hanging paragraph." This so-called "hanging paragraph" prohibits the bifurcation of a claim under §506 where the creditor has a purchase money security interest securing the debt, and the collateral is a motor vehicle purchased for the personal use of the debtor within 910 days preceding the date of the filing of the petition. Under BAPCPA, vehicles purchased within the 910 days preceding the filing of the petition may no longer be bifurcated into secured and unsecured claims, but rather must be treated under the plan as fully secured. In re Wright, 338 B.R. 917, 919-20 (Bankr. M.D. Ala. 2006). The vehicle referenced in the Soards case falls squarely within the

hanging paragraph prohibiting bifurcation of Ford's claim into a secured and unsecured claim. The Morrison case does not involve a 910 vehicle, but the Morrisons propose to treat Ford's claim as fully secured. The only issue in dispute in both cases is the applicable interest rate.

Where the debtor does not surrender the collateral and the secured creditor does not consent to the terms of the plan, the present value of the deferred payments provided for in the debtor's plan must not be less than the allowed amount of the secured creditor's claim. 11 U.S.C. §1325(b)(5)(B)(ii). This section requires that the creditor be compensated due to the delay in time that the creditor receives payments over the life of the plan. In Till, the Supreme Court determined that the language of this statute meant that the creditor's claim had to be paid in full either at the time of confirmation or over time with interest. Till, 541 U.S. at 473-74. The Supreme Court adopted the "formula" or "risk plus" analysis in determining the appropriate rate of interest. Under this formula, the prime rate serves as a base rate and is adjusted for the risk of default associated with payments over the term of a Chapter 13 Plan. The Till court considered and rejected the presumptive contract rate, the cost of funds approach and the coerced loan approach before determining that the formula analysis was the appropriate analysis. The court stated:

> [U]nlike the coerced loan, presumptive contract rate, and cost of funds approaches, the formula approach entails a straightforward, familiar and objective inquiry, and minimizes the need for potentially costly additional evidentiary proceedings. Moreover, the resulting "prime-plus" rate of interest depends only on the state of financial markets, the circumstances of the bankruptcy estate, and the characteristics of the loan, not on the creditor's circumstances or its prior interactions with the debtor.

Id. at 480. Using the formula approach, the court stated that the original contract between the debtor and the creditor is "no longer relevant." Id. at 477.

The language of 11 U.S.C. §1325(b)(5)(B)(ii) was unchanged by BAPCPA and the Supreme Court's interpretation of this language in Till is still valid. Several post-BAPCPA cases have recognized the continued validity of the Till analysis and rejected creditors' arguments for imposition of higher than prime interest rates contained in the parties' contract, even where the vehicle in issue was a 910 vehicle. See, In re Brown, 339 B.R. 818 (Bankr. S.D. Ga. 2006); In re Fleming, 339 B.R. 716 (Bankr. E.D. Mo. 2006); In re DeSardi, 340 B.R.790 (Bankr. S.D. Tex. 2006); In re Wright, 338 B.R. 917 (Bankr. M.D. Ala. 2006); and In re Robinson, 338 B.R. 70 (Bankr. W.D. Mo. 2006).

The Court finds that the Till analysis is still sound and applies to cases like those at bar where the contact rate of interest is below prime. At least two recent decisions have so held. See In re Pryor, 341 B.R. 648 (Bankr. C.D. Ill. 2006) (holding in a pre-BAPCPA case that the Till analysis applied establishing the appropriate rate of interest in a "crammed down plan" where the original contract rate was below prime) and In re Scruggs, 2006 W.L. 1525852 (Bankr. E.D. Ark. 2006) (holding in post-BAPCPA 910 vehicle case where original contract provided for 0% interest for 60 months that the Till analysis applied to establish interest rate on the claim). Simply stated, where the plan proposes to pay the secured claim in installments over time, the Till rate of interest must be added to the payment to arrive at the present value of the claim and the contract rate of interest is irrelevant to the analysis. See Scruggs, 2006 W.L. 1525852 at 3.

The Court must determine the appropriate rate of interest to be applied to Ford's claims herein. In the absence of evidence of the risks associated with a default, the Court determines that an additional two percentage points to the prime rate is the appropriate rate to be applied on Ford's claims in these cases.

The Debtors herein contend that applying a higher interest rate than the contract rate results in a windfall to the creditor. This argument was considered and rejected by the court in Pryor. The Supreme Court in Till determined that 11 U.S.C. §1325(a)(5)(B)(ii) applies in all crammed down cases. Here, the Debtors are proposing to modify the payment streams and Ford is entitled to the present value of its claim as provided by the statute and in Till. The Court notes, however, that the Plan may provide for direct payments to Ford in accordance with the terms of the contract and in such a case, Ford must live with the contract rate of interest, no matter how low it is. See Pryor, 2006 W.L. 1348409 at 3.

Finally, Debtors also cite to an Administrative Order used by the Bankruptcy Court in the Western District of North Carolina where debtors with contracts containing a lower rate of interest than the formula analysis in Till may elect to use the contract rate. This Administrative Order is, of course, not binding on this Court. Further, it conflicts with the Supreme Court's opinion in Till. If the Debtors want to use the contract rate of interest, they are free to provide payments directly to the creditor outside the Plan. Otherwise, the Till analysis applies to both above and below market contract rates pursuant to 11 U.S.C. §1325(a)(5)(B)(ii).

## CONCLUSION

For all of the above reasons, the Court **SUSTAINS** the Objection of Ford Motor Credit Company to the Chapter 13 Plans of Debtors Barry W. Soards and Nancy A. Soards and Arnold L. Morrison and Patricia L. Morrison as to the rate of interest applied to Ford's claims.

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BARRY W. SOARDS | ) | CASE NO.: 06-30121 |
| NANCY A. SOARDS | ) | |
| | ) | |
|           Debtors | ) | |

and

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ARNOLD L. MORRISON | ) | CASE NO.: 06-30168 |
| PATRICIA L. MORRISON a.k.a. | ) | |
|   LUANN MORRISON | ) | |
| | ) | |
|           Debtors | ) | |

## **ORDER**

Pursuant to the Memorandum-Opinion entered this date and incorporated herein by reference,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the Objections of Ford Motor Credit Company to the Chapter 13 Plans of Debtors Barry W. Soards and Nancy A. Soards and Debtors Arnold L. Morrison and Patricia L. Morrison, be and hereby are, **SUSTAINED**.

Debtors in each of the above referenced cases have 14 days from the date of entry of this Order to file amended plans on the applicable interest rate on Ford Motor Credit Company's claims in accordance with the guidelines of the Memorandum-Opinion entered herein.